## REINHART & DONOVAN CO. v. MISSOURI-KANSAS-TEXAS R. CO.

No. 29178.   Sept. 17, 1940.

105 P. 2d 541.

Twyford & Smith and William J. Crowe, all of Oklahoma City, for plaintiff in error.

M. D. Green, John E. M. Taylor, and Lloyd W. Jones, all of Oklahoma City, for defendant in error.

HURST, J. Plaintiff, Missouri-Kansas-Texas Railroad Company, brought this action to quiet its title to a certain tract of land in Oklahoma City, and to recover possession thereof. The case was tried to the court as an action of equitable cognizance, and the trial court made findings of fact and conclusions of law, and rendered judgment for plaintiff, from which defendant appeals.

Defendant makes four contentions: (1) That title to railroad property may be acquired by adverse possession; (2) that defendant acquired title by adverse possession; (3) that the acts of plaintiff and defendant and their predecessors in title in determining the boundary lines of the tract estopped plaintiff to claim it; and (4) that under the evidence plaintiff never owned more than an undivided one-half interest in the tract. Under the view we take of the case, it is necessary to consider only the last three contentions.

1. The second and third contentions may be discussed together. The tract in dispute is part of a larger tract acquired by plaintiff in 1905 in the southeast quarter of section 34, T. 11, R. 3. This larger tract adjoined the north right-of-way line of its main line, and a portion thereof was used for the construction of an industry track or spur. The portion involved in this action is a small triangle of land between the right of way of the main and spur tracks of plaintiff. The junction of these rights of way is at the east end or apex of the tract.

The title of defendant is based upon a tax deed issued to one Reed in 1913, but no notice of the application for this deed was served on plaintiff, although its title was of record. The tract appears to have been vacant at that time, except for a small building housing some machinery which had been unloaded thereon by plaintiff from its cars at the request of one Hassenflu, who was in charge of the machinery, but who did not claim any interest in the tract. Defendant's evidence is that in 1916 Reed put a fence of two strands of smooth wire around the tract, and made written leases to a colored man for two years, under which rents were collected, and crops were raised by the tenants. Thereafter, while it is testified that other tenants under verbal leases made crops thereon, the evidence is vague as to their names or the years in which they occupied the premises, and the evidence as to possession is unsatisfactory and doubtful. In 1926 the Western Paving Company, which had a plant on the spur track of plaintiff just north of the tract, acquired a paper title to the tract and asserted title thereto. It also claimed some sort of possession. Its title, which was wholly without foundation, was purchased by defendant in July, 1930, after defendant had been served with notice to vacate by plaintiff. It also appears that in 1929 or 1930 defendant, who had previously acquired Reed's title, placed another fence around the property, which was immediately torn down by the Western Paving Company. It is apparent from defendant's evidence that the smooth wire fence constructed by Reed was soon torn down or permitted to fall down, and that from about 1919 to 1929 there was no open, notorious, and exclusive possession by defendant's predecessors in title.

Plaintiff's evidence was to the effect that the tract was vacant, and that it had a path across it, leading from the main track to the spur track, which path was used by plaintiff's employees in crossing from one track to the other; that it was largely covered with weeds and brush, which were occasionally cut by the section men, and that on various occasions earth was taken therefrom for filling in its tracks in the vicinity. There was also evidence tending to prove that it was not cultivated as testified by defendant's witnesses.

Defendant had no legal title. The tax deed to Reed was void as to plaintiff for the reason that notice of the application therefor was not served on plaintiff. Farmers Nat. Bank of Oklahoma City v. Gillis, 155 Okla. 290, 9 P. 2d 47. The title which it acquired from the Western Paving Company was without legal foundation. Therefore, defendant's claim of title to the tract depended entirely upon its adverse possession thereof for the period of 15 years prior to the bringing of plaintiff's action. It appears that both parties paid taxes on the property.

The trial court found that defendant had not shown open, notorious, hostile, uninterrupted, and exclusive possession of the tract for a sufficient length of time to vest it with title by adverse possession, and that plaintiff was the owner of the property, and entitled to the possession thereof, and rendered judgment accordingly. The cause being tried as one of equitable cognizance, unless this finding is against the clear weight of the evidence, it must be sustained. Possession, to be of such adverse nature as to ripen into title, must be open, visible, continuous, and exclusive, with a claim of ownership, such as will notify persons seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles or claimants. Flesher v. Callahan, 32 Okla. 283, 122 P. 489; Vernor v. Poorman, 59 Okla. 105, 158 P. 615. It must be established by clear and positive proof, and all inferences and presumptions are in favor of the rightful owner. Farmers' Nat. Bank of Oklahoma City v. Gillis, supra; Clark v. Atchison, T. & S. F. Ry. Co., 144 Okla. 244, 291 P. 86. Measured by these rules, the proof of defendant failed to establish such adverse possession as would vest it with title to the tract in controversy.

Nor does the evidence establish the acquiescence by plaintiff and defendant in the boundary line which defendant contends was fixed by the fences it placed around the property. This contention of defendant is based upon the general rule announced in 9 C. J. 244, that mutual recognition of, and acquiescence in, a line as the boundary line of one's land, for a considerable period of time, affords strong, if not conclusive, evidence that the line so recognized is in fact the true line. Midland Valley R. Co. v. Imler, 130 Okla. 79, 262 P. 1067, is relied upon as decisive of this contention, but examination of that case discloses an entirely different state of facts from those shown by the evidence in the present case. They coincide in only one respect, namely, that the railroad right of way was fenced. The evidence in the present case wholly fails to conform to that in Midland Valley R. Co. v. Imler, and Johnson v. Whelan, 186 Okla. 511, 98 P. 2d 1103, and fails to establish any recognition of or acquiescence in a boundary line by plaintiff, or the permanent fencing of the tract by defendant. The tract was not included in the ordinary 100-foot right of way of plaintiff's main line or spur track, and by fencing those rights of way it did not necessarily abandon the land owned by it not included therein. The fences of defendant, as shown by the evidence, were not of a lasting and permanent character, and did not continue to exist over a considerable period of time, and the existence thereof was denied by numerous witnesses, who testified that both the fences and cultivation asserted by defendant as to this tract were in fact west of its western boundary. In the present case plaintiff and defendant were not adjoining landowners. Defendant, having failed in its proof of adverse possession, had no title to the tract, and therefore could not raise the question of recognized boundary between two portions of plaintiff's property. The trial court properly refused the finding as to boundary requested by defendant.

We conclude that the finding of the trial court that defendant failed to establish its adverse possession of the land for 15 years preceding the bringing of this action is not against the clear weight of the evidence, and it therefore will not be disturbed. Cordilla v. Taylor, 181 Okla. 20, 72 P. 2d 375.

2. Defendant's fourth contention, that plaintiff did not own more than an undivided one-half interest in the tract in controversy, depends upon the construction of two deeds made by Willie A. Wallace, the original patentee of the land. On July 22, 1897, Wallace executed a warranty deed to J. W. Phillips, conveying to Phillips an undivided one-half interest in the quarter section in which the tract in controversy is located. On August 13, 1897, Wallace executed to Phillips another warranty deed, conveying an undivided one-half interest in the same quarter section. The trial court held that the second deed was a correction deed, and that by both deeds Phillips acquired only a one-half interest.

Both deeds were recorded on the same day, and each recites a consideration of $2,000. The first deed mentions no encumbrances, and contains several unfilled blanks. It does not show the marital status of the grantor. It makes no exceptions to the covenant of warranty. The second deed contains no unfilled blanks, recites that the grantor is a widower, excepts from the warranty a mortgage of $700 and another for $800, and contains this significant paragraph, which was not contained in the first deed:

"And the said Willie A. Wallace, Grantor herein, hereby stipulates, promises and agrees to and with said Grantee, J. W. Phillips, that he will pay and discharge the mortgage and incumbrances now of record upon and against said land hereinafter named, out of and from the undivided one-half interest retained by the said Grantor, Willie A. Wallace. * * *"

Thereafter, on September 8, 1897, Wallace conveyed to W. A. Wallace, Jr., and Gertie Wallace an undivided one-fourth interest each in the quarter section. Plaintiff claims through a deed from the executrix of Phillips conveying

a half interest and a deed from W. A. Wallace, Jr., and a deed from Gertie Wallace, each of these two conveying a one-fourth interest. There is no evidence that Phillips ever claimed more than a one-half interest. No witness conversant with the real facts and circumstances surrounding this transaction was produced. We conclude that this contention is not sustained, but is overcome by the recitations in the deeds, and that the trial court correctly held the second deed a correction of the first, and that by the deeds from the executrix of Phillips, and from W. A. Wallace, Jr., and Gertie Wallace, plaintiff's grantors acquired full title to the land in question, and that their conveyance to plaintiff vested in plaintiff the entire legal title thereto.

Affirmed.

BAYLESS, C. J., and RILEY, CORN, and DANNER, JJ., concur.